Wheeler *et al.* agt. Jones.

# SUPREME COURT.

## RUSSELL WHEELER, FRANK E. WHEELER and FRANCIS BEMAN, Jr., agt. DAVID M. JONES.

*Debt— Collateral security to — When does not extend time of payment of — Neglect of creditor to enforce does not release debtor.*

The transfer of accounts against third parties, as security for an indebtedness of the assignor to the assignee, does not extend the time of payment of the original debt, unless it is so agreed.

To make the taking of collateral security extend the time of payment of the indebtedness secured, there must be either a positive agreement to that effect or the circumstances must show that such was in fact the intention of the parties.

Mere neglect on the part of a creditor to collect securities held by him as collateral security to a debt, will not release the debtor.

*St. Lawrence Circuit, October*, 1885.

*W. H. Sawyer*, for plaintiffs.

*L. P. Hale*, for defendant.

TAPPAN, *J.*— Plaintiffs as copartners under the firm name of Russell Wheeler, Son & Co., doing mercantile business at Utica, N. Y., on June 11, 1884, and on divers days until and on the 18th day of December, 1884, sold and delivered to defendant, a merchant at Canton, N. Y., goods to the amount of $1,494.07, upon terms of credit that had expired upon the commencement of this action, on April 27, 1885, upon which interest had accrued, down to the time of the trial, to the amount of $59.49, making their claim then the sum of $1,553.56, upon which the defendant had paid in cash, work, labor and material, at different times since plaintiff's claim became due, the sum of $748.42; to which should be added interest, $26.84; making the sum to be deducted, $775.26; and leaving the sum of $778.30 unpaid at the date of the trial, October 14, 1885.

The sum unpaid at the time above stated was not the subject of controversy between the parties.

The contention upon the trial was as to the effect of a written instrument made by the defendant and delivered to the plaintiffs on November 27, 1884, which was as follows:

" Whereas, I, David M. Jones, of Canton, am justly indebted unto the firm of Russell Wheeler, Son & Co., of Utica, N. Y., in the sum of $1,360.64; now, therefore, for the purpose of securing said debt to said firm, I do hereby sell, assign and set over to them the following accounts and demands, to wit:

| | |
|---|---:|
| Caleb Pierce, of Madrid, account | $100 00 |
| Nelson Watson, of Canton, account | 125 00 |
| Homer Newton, of Canton, account | 150 00 |
| John D. Grange, of Canton, account | 150 00 |
| George L. Stanton, of Canton, account | 97 00 |
| Supervisors town of Canton, account | 300 00 |
| Trustees of First Presbyterian church of Potsdam, N. Y., account | 365 00 |
| Charles Cox, of Potsdam, account | 185 00 |
| Adam Fisher, of Madrid, note | 76 00 |
| North Chamberlain, Canton, account, about | 140 00 |

The said assignees are to collect said claims as they respectively fall due, and place the several amounts so received from them to my credit as payments upon my indebtedness, and after the same shall be paid in full to return such claims as are uncollected to me, if any there be; also, to account to me for any amount received by them over and above the amount of their said claim and expenses of collection.

"Dated CANTON, *November* 27, 1884.

                                        "D. M. JONES."

The defendant's counsel contends that the effect of this instrument, when accepted by the plaintiffs, was to extend the time of payment of their claim against defendant until the same could

be collected from the accounts assigned, or until effort had been made sufficient to show that the claim could not be made from such accounts.

The assignment of the accounts was taken, not in *payment*, but as *security* for the plaintiffs claim.

It is well settled law that the transfer of accounts against third parties, as security for an indebtedness of the assignor to the assignee, does not extend the time of payment of the original debt, unless it is so agreed (*Carey* agt. *White*, 52 *N. Y.*, 135; *Kemmil* agt. *Wilson*, 4 *Wash. Circuit Ct. Rep.*, 308; *United States* agt. *Hodge*, 6 *How.* [*U. S.*], 279; *Van Etten* agt. *Troudden*, 67 *Barb.* [*S. C.*], 342; *same case less fully reported*, 1 *Hun*, 432; *Elwood* agt. *Deifendorf*, 5 *Barb.* [*S. C.*], 398).

To make the taking of collateral security extend the time of payment of the indebtedness secured, there must be either a positive agreement to that effect, or the circumstances must show that such was in fact the intention of the parties.

In *Dunham* agt. *Countryman* (66 *Barb.*, 268), the time of payment was plainly extended by the terms of a written agreement.

In *Dunker* agt. *National Bank of Fort Edward* (36 *Hun*, 565), the mortgage taken in the name of the creditors as security recited the note, and then said: "the same to be paid in manner following, giving fifteen days for payment."

The mortgage clearly fixed a later day for the payment of the original note, than that stated in the note itself.

In *Grocers Bank* agt. *Penfield* (7 *Hun*, 279), the defendant, Truax, had a note discounted with the plaintiff; when it became due he paid part of it, and gave two notes of Penfield & Stone, the other defendants, for the balance. These notes were obtained at the request of the bank officers for a sum, which, with the amount on deposit in the bank by Truax, for which he gave his check, made the amount of the note, which had become due. The bank refused to give up the original note, but, as far as the case shows, had resisted suit upon it. Upon suit brought upon the two notes last received by the bank after due, it was properly held that the effect of the transaction was to

Wheeler *et al.* agt. Jones.

extend the time of payment of the original note until the two notes taken by the bank, under the circumstances above related, became due, and that such extension was a good consideration for the other two notes, and rendered them valid in the hands of the bank, although given by the makers to Truax as accommodation paper.

That was the case of giving negotiable paper, payable in the future, to take the place of a debt past due, made especially for that purpose, endorsed by Truax, which, when once transferred to the bank, would be good in the hands of the holder, if received for value before due.

In *Beard* agt. *Root* (4 *Hun*, 356), the written agreement, in terms, extended the time of payment of the note for six months, until the mortgage assigned became due.

*Wakefield Bank* agt. *Truesdale* (55 *Barb.*, 602), was a case where the maker of a note, just before the note fell due, paid interest for six months in advance, which was indorsed by the cashier of the bank, "In't paid to Feb. 26, 1886," and the note was not paid or sued until after that time, and this was held to extend the time of payment to that time and release sureties. The decision is put upon the ground that all the circumstances, taken together, showed an intent of the maker, and the cashier acting for the bank, to make the extension.

In *F'lushman* agt. *Strain* (90 *N. Y.*, 110), the note was sold to the creditor, and credited to the debtor on account — a different transaction from a transfer for security. By this, the time of payment of the' original indebtedness was extended until the note taken in its place became due.

*Hubbard* agt. *Gunny* (64 *N. Y.*, 457) was a case where the holder of a promissory note took a new note from the debtor, payable at a future day, and this was held, under the particular circumstances of that case, to operate to extend the time of payment of the original note until the note taken in its place became due. I think that there is no real conflict in the cases upon careful comparison.

Vol. III.        61

The case of *Kemmil* agt. *Wilson* (4 *Wash. Circuit Ct. Rep.*, 308) was nearly identical with the case at bar in its facts. The action was upon a promissory note made by Kemmil. After it became due Wilson assigned to Kemmil two recognizances, as the case states, "to be held by the said Kemmil as collateral security for the debt due by the said Wilson to him, to be collected by Kemmil as he may think proper, and the balance due upon the recognizances, after discharging the said debt, to be paid by said Kemmil to the said Wilson."

The defendant's counsel contended before the jury, that the assignment ought to be so construed as to compel the plaintiff to use all the necessary means to coerce the payment of the recognizances, before he could sue for the original debt; that for ought that appeared, he might have collected some portion, or the whole amount of the recognizances, and, at all events, he then had the whole control over them as assignee.

Judge WASHINGTON charged the jury that these recognizances were assigned to plaintiff expressly as collateral security, and consequently they could not be considered as payment or satisfaction of the original debt, or as operating even to suspend the plaintiff's remedy to enforce the payment of it.

In referring to the defendant's contention he uses this language: "If the plaintiff's right to sue for his original debt is suspended at all, it would be difficult to say at what time, or upon what contingency, the suspension could be removed; the contract points out none, nor has the defendant's counsel undertaken to suggest any."

"If the evidence of debt assigned to the creditor be negotiable, and have been parted with by him, he cannot recover upon the original debt, because the debtor might, in such case, be twice charged  *  *  *  by payment of the original debt. The defendant becomes in equity, as he is in law, the owner of these recognizances, and entitled to collect their amount or enforce payment of them;" that if anything had been paid to plaintiff it would operate, *pro tanto*, as payment upon the original debt; that it was for defendant to make proof of such

payment. The court in that case directed a verdict for plaintiff. In the case at bar the defendant could, at any time, have paid his indebtedness to the plaintiffs, and such payment would have operated to reinvest him with the several claims assigned to them as security for the payment of their debt.

Mere neglect on their part to collect these claims would not release defendant (*Gilbert* agt. *Marsh*, 12 *Hun*, 519).

The construction claimed by defendant would be unjust to plaintiffs, because it would operate to indefinitely postpone the time of the payment of their claim against defendant, when it has not been so stipulated in the agreement, deliberately formulated and reduced to writing.

Construed in the light of the authorities, it is not ambiguous or of doubtful construction.

Judgment is directed for plaintiffs.